### The COMMON FUND FOR NON-PROFIT ORGANIZATIONS, Plaintiff,

### v.

### KPMG PEAT MARWICK L.L.P., KPMG Peat Marwick, First Capital Strategists, John J. McCollum, Robert E. Frith, Jr., Keith H. Cunningham, and Paul J. Gangemi, Defendants.

No. 96 Civ. 0255 (MGC).

United States District Court, S.D. New York.

Feb. 6, 1997.

---

Sidley & Austin by John G. Hutchinson, John J. Kuster, New York City, for KPMG Peat Marwick LLP (sued as KPMG Peat Marwick, L.L.P. and KPMG Peat Marwick).

Richards Spears Kibbe & Orbe, New York City by Linda Imes, Kenneth P. Held, David Spears, for First Capital Strategists, John J. McCollum, Robert E. Frith, Keith H. Cunningham, and Paul J. Gangemi.

### MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

This case arises out of losses sustained by The Common Fund for Non–Profit Organizations ("the Common Fund") when Kent A. Ahrens, an employee of First Capital Strategists ("First Capital"), engaged in unauthorized and unhedged securities trading for the Common Fund's account. At the time, First Capital was the Common Fund's exclusive agent for securities lending and arbitrage activities. The Common Fund has sued First Capital and the four general partners of First Capital on a variety of grounds, and has sued KPMG Peat Marwick LLP ("Peat Marwick"), the Common Fund's auditors at the time, for professional malpractice, breach of contract, and negligent misrepresentation. First Capital has asserted three cross-claims against Peat Marwick: first, a claim for breach of contract under a third party beneficiary theory; second, a claim for negligence based on professional malpractice; and third, a claim for contribution. Peat Marwick now moves to dismiss those of First Capital's cross claims which allege breach of contract and professional malpractice. On the assumption that all of the allegations of the cross-claims are true, for the reasons discussed below, the motion is granted.

### 1. Third Party Beneficiary

First Capital alleges that Peat Marwick is liable to it for damages because Peat Marwick breached a contract between Peat Marwick and the Common Fund to which First Capital was a third party beneficiary. First Capital can only recover for a breach of this contract if it was an intended rather than an incidental beneficiary. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985).

The contract between Peat Marwick and the Common Fund allegedly provided that Peat Marwick would provide certain audit services relating specifically to First Capital's securities lending and arbitrage activities. Peat Marwick allegedly agreed to give special scrutiny to First Capital's activities. Specifically, Peat Marwick was to audit First Capital financial reports, ensure that First Capital was in compliance with Guidelines established by the Common Fund, and audit First Capital's system of controls and procedures to ensure that unauthorized trading could not occur.

First Capital also alleges that the Common Fund intended the agreement to benefit First Capital as well as to benefit the Common Fund. This was allegedly because the Common Fund and First Capital had an agreement that the Common Fund would supervise First Capital's and its employees' securities lending and arbitrage activities for the Common Fund. The Common Fund allegedly earned significant fees for its supervision of First Capital. Thus, First Capital argues, the Common Fund intended to benefit First Capital by relieving First Capital of the expense of hiring its own auditor, by satisfying First Capital that it was in compliance with the Common Fund's guidelines, and by satisfying First Capital that its controls were sufficient to detect unauthorized trading. The allegations that First Capital argues demonstrate the Common Fund's intent are: (1) that the Common Fund had always hired outside auditors to perform these functions for First Capital; (2) that the Common Fund included First Capital at a meeting with Peat Marwick where the scope of Peat Marwick's audit procedures for First Capital was discussed and decided; and (3) that the Common Fund sent a draft of Peat Marwick's proposed audit plan to First Capital in October 1993 for review and comment.

█ Even if all these allegations are true, First Capital has not sufficiently alleged that it was an intended beneficiary of the agreement between Peat Marwick and the Common Fund. The allegations suggest nothing more than that an agreement was made that Peat Marwick would give special scrutiny to First Capital. But the allega-

tions do not suggest that the agreement was made primarily to benefit First Capital. On the contrary, the allegations suggest that the agreement was for the primary benefit and protection of the Common Fund, with at most a secondary intent by the Common Fund to benefit First Capital.

Furthermore, there is no allegation that supports an inference that Peat Marwick intended to benefit First Capital. First Capital only makes two allegations which directly connect Peat Marwick to First Capital. First, First Capital alleges that at an August 1993 meeting among all three parties, Peat Marwick agreed with the Common Fund to monitor First Capital's compliance with the 1993 Guidelines. Second, First Capital alleges that certain audit services were performed by Peat Marwick on the premises of First Capital. Those allegations are insufficient to support an inference that Peat Marwick intended First Capital to be a beneficiary of the contract.

The Restatement (Second) of Contracts § 302 states that a beneficiary of a promise is an intended beneficiary if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties ..." This approach to third party beneficiary law was adopted by the New York Court of Appeals in *Fourth Ocean* and was cited by both Peat Marwick and First Capital at oral argument and in subsequent letters to the court. In this case, First Capital has not made sufficient allegations to permit an inference that recognition of First Capital as a third party beneficiary would be appropriate to effectuate the intentions of the parties. First Capital was at most an incidental beneficiary of the contract.

### 2. Professional Malpractice

In determining whether Peat Marwick's motion to dismiss First Capital's professional malpractice claim should be granted, the issue is whether Peat Marwick owed a duty to First Capital. New York has a "near privity" requirement for accountant liability that was set forth in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) and reaffirmed in *Credit Alliance Corporation v. Arthur Andersen*, 65 N.Y.2d 536, 493 N.Y.S.2d

435, 483 N.E.2d 110 (1985). *Credit Alliance* discussed the circumstances under which an accountant could be liable in negligence to a noncontractual party who relied to its detriment on inaccurate financial reports. The New York Court of Appeals held that to be liable, the accountant must have been aware that the financial reports were to be used for a particular purpose, in furtherance of which a known party was intended to rely, and there must have been some conduct on the part of the accountant linking the accountant to that party which evinces the accountant's understanding of that party's reliance. *Id.* at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110. The necessary "linking conduct" in this case must be conduct by Peat Marwick, the accountant.

In *European American Bank and Trust Company v. Strauhs & Kaye,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), the companion case to *Credit Alliance,* the New York Court of Appeals held that a lender sufficiently alleged a negligence claim against its borrower's accountant. In that case, it was alleged that the accountant knew that the lender was relying on the financial statements, and that representatives of the accountant and the lender were in direct oral and written communication during the entire course of the lending relationship. *Id.* at 544, 493 N.Y.S.2d 435, 483 N.E.2d 110. It was further alleged that representatives of the accountant and lender met together to discuss the accountant's evaluations and the lender's reliance thereon. *Id.*

In *Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co.,* 79 N.Y.2d 695, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992), the New York Court of Appeals held that a single unsolicited telephone call about an audit report from a plaintiff lender to the borrower's accountant was insufficient linking conduct to demonstrate the necessary "linking conduct." The Court contrasted the facts to those in *European American,* where "the accountants had multiple, direct and substantive communications and personal meetings with the relying lender during the entire course of the lending relationship." *Security Pacific* at 705, 586 N.Y.S.2d 87, 597 N.E.2d 1080.

In this case, First Capital alleges that its relationship with the Common Fund was unique and that Peat Marwick was aware of that unique relationship. Further, First Capital alleges that Peat Marwick specifically agreed to give special attention to First Capital and to audit and examine First Capital's reports and procedures. The only allegations in the complaint that relate to the necessary "linking conduct" are: (1) an allegation that on August 10, 1993, at a meeting attended by the Common Fund, First Capital, and Peat Marwick, the Common Fund and Peat Marwick agreed that they would work together to develop and recommend procedures to ensure First Capital's and its employees' compliance with the 1993 Guidelines; (2) an allegation that various audit services, including review of First Capital's internal reporting and controls, were performed on the premises of First Capital; and (3) an allegation that Peat Marwick prepared proposed compliance review procedures for First Capital, which were then sent by the Common Fund to First Capital for its review and comment.

These allegations, even if true, do not constitute sufficient linking conduct on the part of Peat Marwick to demonstrate its understanding of First Capital's reliance on Peat Marwick's services. Therefore, the allegations do not support a finding that there was a relationship approaching privity between First Capital and Peat Marwick. There is no allegation that Peat Marwick ever promised First Capital to provide audit services. There is no allegation that Peat Marwick ever provided First Capital with any written document. While on one occasion, a draft of compliance review procedures was sent to First Capital by the Common Fund, there is no allegation that Peat Marwick had any knowledge that the draft was ever provided to First Capital. There is no allegation that First Capital ever saw or relied on any of Peat Marwick's written audit reports. Furthermore, there is no allegation that Peat Marwick ever made any oral representation to First Capital or that First Capital relied on any oral representation. Nor does First Capital allege that at the August 10, 1993 meeting there was any discussion of reliance, as was alleged in *European American.* The

allegations that First Capital does make, which are set forth above, simply do not support a finding of a relationship approaching privity between First Capital and Peat Marwick.

### Conclusion

For the foregoing reasons, Peat Marwick's motion to dismiss First Capital's first and second cross-claims is granted.

SO ORDERED.